# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER F. SIMMONS, JR.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SHERRI ATKINS, et al.,<br><br>　　　　Defendants. | Case No. 1:16-cv-01447-BAM (PC)<br><br>SCREENING ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 1)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Walter F. Simmons Jr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 3.)

Plaintiff's complaint, filed on September 29, 2016, is currently before the Court for screening. (ECF No. 1.)

**I.　　Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief

from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at the Correctional Training Facility in Soledad, CA. The events at issue in this complaint took place at Valley State Prison ("VSP") in Chowchilla, CA. Plaintiff names the following defendants in this action: Sherri Atkins, Native American Spiritual Advisor at VSP; Carmen Maroney, Community Resource Manager at VSP; Warden R. Fisher; former Warden Ron Davis; Governor Jerry Brown; State of California; and the United States of America.

Plaintiff's allegations are as follows:  Plaintiff was denied weekly access to his primary religious service; i.e., Sweat Lodge ceremonies by defendants Sherri Atkins, Carmen Maroney,

2

Warden Fisher, and former Warden Ron Davis.  Each of these defendants is responsible for ensuring qualified chaplains are provided and religious services needs are met.  Plaintiff was denied proper, meaningful, and authentic Lakota ceremonies as taught to Plaintiff by his ancestors and spirit helper.  All of the above are responsible, from Plaintiff's arrival at VSP to the present.

Plaintiff was also denied a properly trained, endorsed, and federally recognized American Indian "medicine man," spiritual advisor or volunteer, from 2000 to present.

Plaintiff was denied access to, and ability to, acquire materials and items needed for prayer and traditional cultural purposes, since 2006.

Plaintiff was denied freedom of religious expression by Defendant S. Atkins, including his traditional right to conduct ceremony for himself and others in keeping with his family, histories, personal vision and calling.

Plaintiff has been denied due process by Defendant S. Atkins, C. Maroney, Warden Fisher and former Warden Davis. S. Atkins, who concocted a lie to have Plaintiff put in Ad Seg. Other officials refused to do a thorough investigation of Plaintiff's traditional ceremonies and lack of qualification claims regarding S. Atkins.

Plaintiff was subjected to cruel and unusual punishments by S. Atkins, Warden R. Fisher, and former Warden Ron Davis in having to endure daily disrespect of being denied all of the above, the disrespecting of the Lodge and purification ceremonies conducted by unqualified non-Indians. Further, Plaintiff endured shame, watered-down spirituality, dead ceremonies, and was placed in Ad. Seg. on two separate occasions for voicing what is proper and correct for men's ceremonies and how to form a proper traditional spiritual circle. Plaintiff was then transferred, which severed Plaintiff from close family connections, without affording him due process.

Plaintiff is seeing the appointment of counsel and a jury trial. Plaintiff also seeks that (1) recognized, properly-trained AMI male spiritual advisors be utilized in men's prisons; (2) that a second Sweat Lodge and sacred grounds area be provided; (3) that federal guidelines for American Indian religious property, materials and allowable items be implemented and the current restrictions of the CDCR Religious Property Matrix be removed; (4) that Plaintiff's personal vision and beliefs regarding ceremonies for himself and others be recognized and accommodated; (5) that various

state and federal rules, regulations, policies and laws which violate Plaintiff's rights be revised; and (6) that an oversight counsel be formed under Plaintiff's guidance. Plaintiff also seeks punitive and compensatory damages.

### III. Discussion

#### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As noted above, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint is short, but it is not a plain or clear statement of his claims and the factually allegations underlying those claims. Plaintiff's complaint is mainly comprised of conclusory statements that his rights were denied.

Plaintiff has also attached fourteen pages of exhibits to his complaint. The exhibits are not referenced or otherwise explained in the complaint. The Court is not required to sift through Plaintiff's exhibits and attachments in an effort to determine what Plaintiff's claim(s) are.

Plaintiff will be granted leave to amend his complaint. If Plaintiff elects to amend his complaint, he must allege what each individual defendant, by name, did or did not do that resulted in a violation of his constitutional rights. If he chooses to add attachments or exhibits to any amended complaint (which he is not required to do), Plaintiff must identify them for the Court and explain their significance, with particularity. Plaintiff may refer to exhibits that are already filed, but must incorporate them by specific reference (using the title or form number of a report, date, author, or other identifying information, for example).

///

///

## B. Sovereign Immunity

Plaintiff names the United States as a defendant. The United States is immune from suit unless it consents to be sued. Edison v. United States, 822 F.3d 510, 517 (9th Cir. 2016) (citing Dalehite v. United States, 346 U.S. 15, 30, 73 S. Ct. 956, 97 L. Ed. 1427 (1953)). Plaintiff has not named any federal employees as defendants, or alleged any actions or inactions by a federal employee for which the United States may be held liable in this action. Therefore, the United States should be dismissed from this action.

## C. Eleventh Amendment

Plaintiff is also attempting to sue the State of California, which he may not do here. Section 1983 authorizes a federal civil rights action against any "person" who acts under color of state law. 42 U.S.C. § 1983. "Persons" who may be sued under § 1983 do not include a state or its entities, or state employees acting in their official capacities. See Will v. Mich. Dept. of State Police, 491 U.S. 58 (1989); see also Kentucky v. Graham, 473 U.S. 159 (1985) (the Eleventh Amendment bars federal damages actions against a state and its entities).

Claims for damages against the state, its agencies or its officers for actions performed in their official capacities are barred under the Eleventh Amendment, unless the state waives its immunity. Kentucky, 473 U.S. at 169; see also Will, 491 U.S. at 71 (neither a state nor its officials acting in their official capacities are persons under § 1983). Section 1983 does not abrogate the states' Eleventh Amendment immunity from suit. See Quern v. Jordan, 440 U.S. 332, 344–45 (1979). Suits for injunctive relief are also generally barred. See Nat'l Audubon Soc'y v. Davis, 307 F.3d 835, 847 (9th Cir. 2002); Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (holding that prisoner's Eighth Amendment claims against CDCR for damages and injunctive relief were barred by Eleventh Amendment immunity); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (Eleventh Amendment immunity extends to state agencies).

## D. Supervisory Liability

Plaintiff names Governor Jerry Brown as a defendant, but states no allegations against that defendant. Plaintiff also generally alleges, with little factual support, that Warden R. Fisher and former Warden Ron Davis subjected him to cruel and unusual punishment and failed to ensure his

5

religious services needs were properly met. To the extent Plaintiff seeks to bring suit against Warden R. Fisher, former Warden Ron Davis, and Governor Jerry Brown based on their roles as supervisors, he may not do so.

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074–75; Lacey, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

To state a claim against any supervisory defendant, Plaintiff must allege facts showing that those defendants participated in or directed conduct that violated his constitutionally protected rights.

### E. Eighth Amendment

Plaintiff alleges that he was subject to cruel and unusual punishments by S. Atkins, Warden R. Fisher, and R. Davis in having to endure disrespect to his religious traditions, for his placement in Ad. Seg. on two occasions for voicing issues about religious ceremonies, and for being transferred without due process.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2005). Prison officials must provide prisoners with medical care and personal safety and must take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. at 1976 (1994) (internal citations and quotations omitted).

6

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834.

Plaintiff's conclusory allegations that his religious traditions were disrespected, that he was housed in Ad. Seg., and that he was transferred, do not show an objective denial of the minimal civilized measure of life's necessities. To the extent it appears Plaintiff is attempting to plead other claims based on these allegations, however, he will be provided the standards for those claims, below.

**F. Due Process Violation**

Plaintiff states that he was denied Due Process by Defendants Atkins, Maroney, Fisher and Davis when they lied to have him placed in Ad. Seg. Plaintiff also asserts that other unnamed officials refused to do a thorough investigation of his ceremonies and complaints that Defendant Atkins was unqualified. Plaintiff also complains that he was transferred without due process.

The Due Process Clause of the Fourteenth Amendment protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). To state a claim for the deprivation of procedural due process, a plaintiff must first identify a liberty interest for which the protection is sought. Id. at 221, 2393. Liberty interests may arise from the Due Process Clause or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, id. at 221–22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. Id. at 222–23 (citing Sandin v. Conner, 515 U.S. 472, 481–84 (1995)). Liberty

interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Id. at 221 (quoting Sandin, 515 U.S. at 484); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

### 1. False charges

Regarding Plaintiff's allegations that a lie was concocted to have him placed in Ad. Seg., Plaintiff is informed that he has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct that may lead to disciplinary sanctions. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989).

With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff v. McDonnel, 418 U.S. 539, 563-71 (1974). As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

Plaintiff has not stated any claim that his due process was violated by any officials who made false charges against him.

### 2. Investigation

To the extent Plaintiff is dissatisfied with the outcome or adequacy of an investigation, that is not a basis for a plausible due process claim. See Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); Page v. Stanley, No. CV 11–2255 CAS (SS), 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to

conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome").

### 3. Transfer

The U.S. Supreme Court has specifically held that a transfer to a different prison does not implicate a liberty interest, and thus does not implicate the Due Process clause. See Meachum v. Fano, 427 U.S. 215, 224-25 (1976) ("Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system."). See also Quach v. Appleberry, Case No. CIV 2:08-00664-HWG-SOM, 2009 WL 1759635, at *5 (E.D. Cal. June 22, 2009) ("A transfer alone does not constitute a substantial hardship; prisoners have no liberty interest in avoiding being transferred to another prison.").

Nor does the fact that Plaintiff was transferred to a different prison away from his family implicate any constitutional interest. Anderson v. Deleon, Case No. C 12-6055 SI PR, 2013 WL 892276, at *5 (N.D. Cal. Mar. 8, 2013) ("Loss of a prison job, assigning an inmate to a prison far from his family and friends, and the like, which result from interprison transfers, are not constitutionally protected interests.") (citing Olim v. Wakinekona, 461 U.S. 238, 247 (1983)).

Accordingly, Plaintiff cannot state a due process claim merely because he was transferred to a less desirable prison without adequate due process.

### G. Free Exercise Clause

Plaintiff complains that he was denied access to religious services, religious items and freedom of expression. The Free Exercise Clause provides, "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST. amend I. Inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam)). The First Amendment is made applicable to state action by incorporation through the Fourteenth Amendment. Everson v. Bd. of Educ. of Ewing Twp., 330 U.S. 1, 8 (1947).

///

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Id. (quoting Price v. Johnston, 334 U.S. 266, 285 (1948)). A prison regulation may therefore impinge upon an inmate's right to exercise his religion if the regulation is "reasonably related to legitimate penological interests." Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citations omitted). Thus, prisons may lawfully restrict religious activities for security purposes and other legitimate penological reasons. Turner v. Safley, 482 U.S. 78, 89–90 (1987); Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Furthermore, the Supreme Court has held that generally-applicable laws that incidentally burden a particular religion's practices do not violate the First Amendment. Employment Div. v. Smith, 494 U.S. 872, 878 (1990).

Claims for violation of the Free Exercise Clause of the First Amendment are used to challenge state or government statutes, regulations, and/or established policies. Thus, in order to state a cognizable claim for their violation, a plaintiff must identify an allegedly offending statute, regulation, or established policy. Under Turner, the Court considers: (1) whether the restriction has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmate; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards, and institution resources; and (4) the presence or absence of alternatives that fully accommodate the inmate's rights at de minimis cost to valid penological interests. Turner, 483 U.S. at 89-91.

Regarding Plaintiff's complaint that he is denied weekly attendance at the sweat lodge, it is unclear whether Plaintiff is allowed any sweat lodge attendance. Attachments to his complaint suggest that Plaintiff is allowed monthly sweat lodge access. It is also unclear what burden, if any, his inability to attend sweat lodge weekly has on the free exercise of Plaintiff's religion. De minimis or minor-burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. See e.g., Rapier v. Harris, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a de minimis burden on inmate's free exercise of religion).

In amending his complaint, Plaintiff must allege facts showing that the denial of being able attend sweat lodge on a weekly basis imposes a substantial burden upon his religious practice. His vague allegations that his personal visions, beliefs, values, or spirituality are not being respected are insufficient.

Plaintiff also makes complaints about the adequacy of the clergy. Generally, prison officials have no affirmative obligations to provide each inmate with the spiritual counselor of his choice. See Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Reimers v. Oregon, 863 F.2d 630, 631-32 (9th Cir. 1989); Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Plaintiff also makes allegations in regards to not being provided with material to make religious tools and artifacts needed for prayer and ceremonies. However, Plaintiff's request for relief and certain attachments to his complaint suggest that he is allowed certain religious material that is on the CDCR Religious Property Matrix. Plaintiff must alleges facts specifying what material he is being denied access to, whether the applicable restrictions serve any legitimate government interest, and whether the restrictions substantially burden his religious practice.

**H. Retaliation**

Plaintiff alleges that he was placed in Ad. Seg. for "voicing what is proper" about the manner in which religious ceremonies and practices were conducted. To the extent Plaintiff seeks to state a claim of retaliation, he has not done so.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 F.3d at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Here, Plaintiff does not state facts showing whether he was engaged in any protected activity, that he was retaliated against because of that activity, who was involved, and how they were involved.

### I. Injunctive Relief

Plaintiff seeks several forms of injunctive relief. Plaintiff is no longer housed at Valley State Prison, where he alleges the incidents at issue occurred, and where the prison official defendants are employed. Therefore, any relief he seeks against the officials at Valley State Prison is moot. See Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (stating prisoner's claims for injunctive relief generally become moot upon transfer) (citing Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

### J. Appointment of Counsel

Plaintiff has requested appointment of counsel to assist him in pursuing his claims. "There is no constitutional right to appointed counsel in a section 1983 action." Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981); Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), withdrawn in part on other grounds, 154 F.3d 952 n.1 (9th Cir. 1998). The Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298, 109 S. Ct. 1814, 1816 (1989).

However, in exceptional circumstances, counsel may be appointed for "indigent civil litigants". United States v. 30.64 Acres of Land More or Less, Situated in Klickitat County, State of Washington, 795 F.2d 796, 799 (9th Cir. 1986); 28 U.S.C.A. § 1915(e)(1) (1996). Determining whether exceptional circumstances are present requires weighing "the likelihood of success on the merits," and the plaintiff's ability to "articulate his claims *pro se* in light of the complexity of the legal issues involved." Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)).

In the present case, the Court does not find the required exceptional circumstances, and Plaintiff has not identified any circumstances warranting appointment of counsel. Even if it is

assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This Court is faced with similar cases almost daily from indigent prisoners proceeding without representation.

Plaintiff's complaint is also being dismissed, with leave to amend, for the failure to state a cognizable claim for relief. At this early stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits. Additionally, based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claims.

For these reasons, Plaintiff's request for the appointment of counsel is HEREBY DENIED without prejudice.

### IV. Conclusion and Order

The Court finds that Plaintiff's complaint fails to state a claim upon which relief may be granted. The Court will grant Plaintiff an opportunity to cure the identified deficiencies which Plaintiff believes, in good faith, are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If Plaintiff chooses to amend his complaint, he may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927. Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's request for the appointment of counsel is denied;

2. Plaintiff's complaint, filed September 29, 2016 (ECF No. 1), is dismissed with leave to amend for failure to state a claim upon which relief can be granted;

13

3. The Clerk's Office shall send to Plaintiff a civil rights complaint form;

4. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint or a notice of voluntary dismissal; and

5. **If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and failure to state a claim.**

IT IS SO ORDERED.

Dated: **July 5, 2017**         /s/ *Barbara A. McAuliffe*
                                UNITED STATES MAGISTRATE JUDGE